IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| KIMBERLY MURPHY,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>FUN TOWN RV DENTON,  )<br>)<br>Defendant.  ) | Case No.: 4:20-cv-602-P<br><br>Judge Mark T. Pittman |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S RENEWED MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

NOW COMES the Plaintiff, KIMBERLY MURPHY, by and through her attorneys, SMITHMARCO, P.C., and for her Response to Defendant's Renewed Motion to Dismiss Plaintiff's Amended Complaint, Plaintiff states as follows:

**I.   INTRODUCTION**

The present case is a privacy case brought pursuant to the "permissible purpose" provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b, which governs who can access consumer report information from credit reporting agencies and for what purpose. To that end, the FCRA enumerates certain "permissible purposes" for accessing credit reports. As is self-evident from the statutory language, Section 1681b of the FCRA is singularly focused on limiting the circumstances under which a third party can access an individual's consumer report. Indeed, in most cases, the consumer must authorize the disclosure. *See*, *e.g.*, § 1681b(b)(2)(A), § 1681b(a)(3)(A)–(F).

On August 9, 2020, Mrs. Murphy filed her First Amended Complaint (Dkt. 9) against Defendant, Fun Town RV Denton (hereinafter "Fun Town"), alleging that Fun Town procured her consumer report without a permissible purpose in violation of §1681b(f)(1). The violation

occurred on January 3, 2020, while Mrs. Murphy's husband, Milton Murphy (hereinafter "Mr. Murphy"), was shopping for a new RV at Fun Town's dealership in Denton, Texas.[1]  Specifically, Mrs. Murphy alleges, *inter alia*, that Fun Town willfully violated the FCRA when it procured her consumer report from 700 Credit.

On August 21, 2020, Fun Town filed a Renewed Motion to Dismiss Mrs. Murphy's Amended Complaint (Dkt. 11), asserting that it did not violate the FCRA because it it was permitted to obtain Mrs. Murphy's consumer report solely based on her marital status by operation of Texas community property law.  In the alternative, Fun Town argues that Mrs. Murphy's Amended Complaint should be dismissed for failure to allege "willful noncompliance" with the FCRA, because Fun Town's interpretation of the statute was objectively reasonable.  This argument is nothing more than the product of "after the fact lawyering," rather than an argument predicated in fact, and asserts an affirmative defense for which Fun Town bears the burden of proof.

Fun Town's arguments are grounded in non-binding caselaw and allude to the false notion that Texas state law somehow supersedes Fun Town's duty to comply with the FCRA.  Critically, with respect to a credit transaction not initiated by the consumer, the FCRA provides specific requirements that must be satisfied.  Congress could not have made clearer that the FCRA was intended to protect consumer privacy by preventing the dissemination of consumer credit information to third parties, except under carefully specified conditions.  When it enacted the FCRA, Congress found, among other things, that "[t]here is a need to insure (sic) that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for

---

[1] Plaintiff's Amended Complaint (Dkt. 9) is predicated on the same cause of action as her initial Complaint (Dkt. 1), but elaborates on the communications between Mrs. Murphy, Milton Murphy, and Fun Town on January 3, 2020, as well as Fun Town's willfulness in procuring Mrs. Murphy's consumer report.

the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).  It is clear that Congress intended to protect a consumer's credit information to the greatest extent practicable and to prohibit access where there was no legitimate business or statutorily allowed purpose.

For the reasons that follow, Fun Town's renewed motion to dismiss should be denied.

## II.   FACTUAL BACKGROUND

On January 3, 2020, Plaintiff (hereinafter "Mrs. Murphy") and her husband, Milton Murphy (hereinafter "Mr. Murphy"), (collectively referred to as "[t]he couple"), were traveling home from a camping trip in their RV, which had been purchased solely by Mr. Murphy from Fun Town approximately six (6) to seven (7) months prior.  (*See* Dkt. 9, Plaintiff's Amended Complaint, page 2, at ¶¶9-10).  Fun Town is a business engaged in the sale and financing of recreational vehicles in Texas.  (Id., at ¶6).  Mrs. Murphy was not a party to the sale of the couple's existing RV, nor was she included in the financing agreement.  (Id., at ¶11).  The existing RV was no longer meeting the couple's needs, so on their way home from camping, Mr. Murphy decided to stop into Fun Town's dealership in Denton, Texas to look at newer, larger RV models.  (Id., at ¶12).  Mrs. Murphy was not interested in being involved in any new transaction for an RV and/or financing agreement with Fun Town.  (Id., at ¶13).  It was important to Mrs. Murphy that her consumer report was not obtained by Fun Town because at the time, she and Mr. Murphy were in the market to purchase a new home.  (Id., page 3, at ¶18).  Mrs. Murphy was mindful of the fact that she needed to maintain a healthy credit history and credit reputation in order to become approved for a home loan, and feared that any inquiry into her credit information by Fun Town could impede her ability to obtain favorable terms.  (Id., page 3, at ¶18).  As a result, Mrs. Murphy elected to stay in the existing RV with her two (2) dogs, and never entered into the Fun Town dealership. (Id., page 2, at ¶13).

Upon entering the dealership, Mr. Murphy was greeted by a Fun Town sales representative. (Id., page 3, at ¶14). Mr. Murphy explicitly told the sales representative that he wanted any purchase and/or finance agreement to be made in his name only, and not to involve Mrs. Murphy and/or obtain her consumer report; the Fun Town sales representative agreed. (Id., at ¶15-16). On January 3, 2020, Mr. Murphy alone was approved for RV financing with Fun Town, and all negotiations that took place that day concerned number(s) and interest rate(s) based solely on Mr. Murphy's creditworthiness and qualifications for financing. (Id., at ¶17).

While Mr. Murphy was still inside the dealership, Mrs. Murphy received an alert on her cell phone notifying her that her consumer report had been obtained by Fun Town. (Id., at ¶19). Despite representing to Mr. Murphy that it would not involve Mrs. Murphy in the sale and/or financing agreement for a new RV, Fun Town accessed Mrs. Murphy's confidential credit information from a consumer reporting agency, 700 Credit, without Mrs. Murphy's permission and without an otherwise permissible purpose to do so under the FCRA. (Id., page 4, at ¶21-27).

Upon receiving the alert that Fun Town had obtained her consumer report, Mrs. Murphy became visibly upset and notified Mr. Murphy of Fun Town's actions. (Id., page 6, at ¶40). The couple met in the Fun Town parking lot and ultimately agreed to leave the dealership without proceeding forward with the RV purchase. (Id., at ¶41). The couple was upset that Fun Town had ignored their specific request not to involve Mrs. Murphy in any prospective transaction and/or financing agreement, and no longer trusted Fun Town enough to continue on with the sale and purchase of a new RV. (Id., at ¶42).

While traveling home, Mrs. Murphy initiated a telephone call to the Fun Town dealership in Denton, Texas, and spoke to the Fun Town employee who had accessed her consumer report. (Id., page 6, at ¶43). This employee apologized to Mrs. Murphy and admitted that he "probably

should have asked for Mrs. Murphy's permission first before obtaining her consumer report," but did so anyway because he believed that Mr. Murphy would qualify for better financing terms and/or interest rates if Mrs. Murphy's credit information was also taken in consideration. (Id., at ¶44).

In impermissibly procuring Mrs. Murphy's consumer report, Fun Town invaded Mrs. Murphy's right to privacy. Fun Town gained access to Mrs. Murphy's private financial and personal information, including, *inter alia*, her current and past addresses, date of birth, employment history, payment and credit history, and phone number(s), all of which was published to unknown employees, representatives and/or agents of Fun Town. (Id., page 5, at ¶36-37). Mrs. Murphy has suffered injury to her credit rating and credit reputation, and is now fearful to apply for home loans and/or other credit opportunities because she believes that Fun Town's actions may impede her ability to secure a mortgage and/or obtain favorable loan terms in the future. (Id., page 7, at ¶¶48-49). For these reasons, Mrs. Murphy will continue to suffer the same harm for an indefinite period in the future. (Id., at ¶50).

### III. STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), quoting Conley v. Gibson, 355 U.S. 41, 47 (1957). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Id., at 555. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id., at 570.

In considering a motion to dismiss, a court must take all of the factual allegations in the complaint as true. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Well-pleaded allegations of fact and every inference fairly deducible therefrom are accepted as true for purposes of a motion to dismiss. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556.

### IV.    LEGAL ARGUMENT & AUTHORITIES

**A.    Mrs. Murphy's consumer report does not fall within a "liberal interpretation" of the FCRA's definition for "consumer report," because Mrs. Murphy's credit information had no bearing on whether Mr. Murphy could obtain RV financing on his own. Simply stated, Fun Town violated §1681b(f)(1) on January 3, 2020, when it obtained Mrs. Murphy's consumer report from 700 Credit after expressly representing to Mr. Murphy that Fun Town would not involve Mrs. Murphy in any business dealings and/or obtain her consumer information.**

Fun Town asserts that Mrs. Murphy's Amended Complaint should be dismissed because her admission that she was married to Mr. Murphy, who ultimately sought financing for a new RV, purportedly establishes that Fun Town had a "permissible purpose" to obtain Mrs. Murphy's consumer report and consequently bars Mrs. Murphy from making a viable claim for "willful noncompliance" under the FCRA. Dkt. 11, pages 5-6. More specifically, Fun Town asserts that it had a permissible purpose to obtain Mrs. Murphy's consumer report because her credit information falls within a "liberal interpretation" of the definition for "consumer report" under the FCRA. Dkt. 11, page 6.

Under this putative liberal construction of the term "consumer report," Fun Town asserts that "a spouse's credit report could constitute an applicant's credit report." Id. (citing Short v. Allstate Credit Bureau, 370 F. Supp. 2d 1173, 1179 (M.D. Ala. 2005); Smith v. GSH Residential Real Estate Corp., 935 F.2d 1287 (4th Cir. 1991); Koropoulos v. Credit Bureau, Inc., 734 F.2d 37

(D.C. Cir. 1984)).  Fun Town's argument lacks merit as it is supported only by non-binding caselaw and contradicts court opinion from within the Fifth Circuit.[2]  Given Congress' express purpose for enacting the FCRA, *i.e.*, to protect consumers' fundamental right of privacy, it is hard to believe that Congress intended such an illogical result as Fun Town suggests.

To support its contention, Fun Town relies primarily on Short v. Allstate Credit Bureau, however, this opinion tends to support Mrs. Murphy's allegations.  370 F. Supp. 2d 1173 (M.D. Ala. 2005).  In Short, the court explains that under §1681b(3)(A), a creditor may request information on an applicant's spouse in a limited number of circumstances, none of which apply to the facts of the present case.  Id.  These circumstances include:

> "Such situations … **where the spouse will use the account or be contractually liable on the account, or where the applicant is relying on the spouse's income or acting as the spouse's agent**."  Id., at 1179 (emphasis added).

Fun Town does not expound on, but cites to another outlier case decided in 1984, Koropoulous v. Credit Bureau, Inc., 734 F.2d 37, 46 (D.C. Cir. 1984).[3]  In Koropoulous, the court held that whether the defendant negligently or willfully issued a non-applicant spouse's consumer report for an impermissible purpose was a genuine issue of material fact that precluded summary judgment.  In its opinion, the court explains:

> "[T]he FCRA seems to allow [defendant] to communicate information about [a non-applicant spouse] **as long as it has bearing on the [applicant spouse's] creditworthiness**."  Koropoulous, 734 F.2d at 46 (emphasis added).

Short and Koropoulous are not applicable to the instant matter.  As Mrs. Murphy's Amended Complaint alleges, Mr. Murphy explicitly told Fun Town that Mrs. Murphy did not wish to be involved in any business transaction with Fun Town, nor was she looking to be considered

---

[2] *See* Davis v. Asset Services, 46 F. Supp. 2d 503 (M.D. La. 1998).
[3] Similarly, Fun Town does not expound on, but also cites to Smith v. GSH Residential Real Estate Corporation, 935 F.2d 1287 (4th Cir. 1991).  In Smith, the 4th Circuit affirmed a district court decision that relied solely on Koropoulous.  Smith is not persuasive for the same reason as Koropoulous.

for financing. Dkt. 9, page 3, at ¶15. Moreover, Fun Town agreed not to involve Mrs. Murphy in any prospective transaction for a new RV. Id., at ¶16. Fun Town did not rely on Mrs. Murphy's income for financing, nor did Mrs. Murphy act as Mr. Murphy's agent during the buying process. In fact, Mr. Murphy alone was approved for RV financing with Fun Town, and all negotiations between Mr. Murphy and Fun Town concerned terms and interest rates that were based solely on Mr. Murphy's creditworthiness. Id., at ¶17. Fun Town later apologized to Mrs. Murphy and admitted that, though it "probably should have asked for her permission before obtaining her consumer report," it did so anyway believing that Mr. Murphy could qualify for better financing terms and/or interests rates if Mrs. Murphy's credit information was also considered. Id., page 6, at ¶44.

To the contrary, Mrs. Murphy's position is supported by caselaw from within the Fifth Circuit. In Davis v. Asset Services, 46 F. Supp. 2d 503 (M.D. La. 1998), several employees and a spouse of one of the employees sued an investigative agency alleging willful violations of the FCRA. In this case the employer, Ochsner, suspected a theft in its accounting department and hired defendant, Asset Services, to investigate. Id., at 504. Asset Services procured consumer reports on several Ochsner employees and their spouses. Id. The court ruled that although it was permissible for Asset Services to procure the employees' consumer reports as the agent for Ochsner, it was not permissible to obtain a credit report on a spouse of an employee for this purpose. Id., at 509 (citing Zamora v. Valley Fed. Sav. & Loan Ass'n of Grand Junction, 811 F.2d 1368 (10th Cir. 1987)). The court further explained:

> "There is no authority under the Fair Credit Reporting Act for a credit reporting agency or a user to obtain a report on anyone except for the reasons enumerated in Section 1681b. The record is clear that the plaintiff, [spouse], was not at any time employed by Ochsner. His only relationship to

>Ochsner was his marriage to an employee. Under 1681b, there was no permissible purpose in obtaining [the spouse's] credit report." Id.[4]

Additionally, Fun Town seemingly argues that state property law conflicts with federal law by alluding throughout its brief to the notion that implications of Texas community property law somehow impede Fun Town's ability to comply with its duties under the FCRA. *See* Dkt. 11. Mrs. Murphy does not agree that any conflict exists between the aforementioned state and federal laws, however, even if Fun Town's assertion were deemed to be correct and a conflict was found by this Court, Fun Town's argument fails for obvious reasons pursuant to the doctrine of federal preemption, which is derived from the Supremacy Clause of the United States Constitution. U.S. Const., Art. VI, cl. 2. In instances of conflict between federal and state law, the Supremacy Clause of the Constitution dictates that the "state law is nullified" and that the federal law is to be enforced. Hillsborough County v. Automated Med. Labs., 471 U.S. 707, 713 (1985). Fun Town's duty to ensure it has a permissible purpose before procuring a spouse's consumer report under the FCRA unequivocally takes precedence over any community property state law that purports to "conflict" with the FCRA.

In conclusion, Mrs. Murphy has alleged facts sufficient to state a claim that Fun Town impermissibly procured her consumer report on January 3, 2020, after Mr. Murphy expressly told Fun Town that Mrs. Murphy did not want to be involved in any business transaction and/or financing agreement with Fun Town, to which Fun Town agreed. Dkt. 9, page 3, at ¶15-16. Mrs. Murphy further maintains that no conflict exists between Fun Town's ability to comply with the FCRA irrespective of the fact that it conducts business in the community property State of Texas.

---

[4] Mrs. Murphy acknowledges that there are factual differences between Davis and the present matter, however, the logic of the Davis opinion applies the same.

Moreover, Texas community property law bears no "fatal effect"[5] on Mrs. Murphy's Amended Complaint as Fun Town suggests. Fun Town asserts that the present matter is similar to Norman v. Lyons, No. 3:12-CV-4294-B, 2013 WL 655058 (N.D. Tex. Feb. 22, 2013), however, this assertion is false. In Norman, the court dismissed the plaintiff's complaint based on the fact that plaintiff could not establish that the report received by the defendants was a "consumer report" within the meaning of the FCRA. Id. The court reasoned that this would remain true regardless of whether plaintiff were granted leave to amend his complaint. Id. No such issue exists in the present case. Fun Town does not dispute that the report it obtained about Mrs. Murphy was a "consumer report" under the FCRA; it argues only that a "liberal construction" of this term purportedly permitted Fun Town to procure Mrs. Murphy's consumer report as the spouse of Mr. Murphy, regardless of the fact that Fun Town possessed knowledge that Mrs. Murphy did not wish to be involved in the purchase of a new RV in any capacity.

For the abovementioned reasons, Fun Town's motion to dismiss should be denied.

**B.   Mrs. Murphy's allegations are sufficient to sustain a claim against Fun Town for willful and/or negligent noncompliance with the FCRA. Fun Town's assertion that its interpretation of the FCRA was objectively reasonable is an affirmative defense for which Fun Town bears the burden of proof. Notwithstanding, §1681b(a) clearly delineates the permissible purposes for obtaining an individual's consumer report under the FCRA, none of which Fun Town possessed on January 3, 2020 when it obtained Mrs. Murphy's consumer report.**

Fun Town argues that Mrs. Murphy cannot sustain a claim for willful noncompliance with the FCRA, because Fun Town's interpretation of the FCRA, which purported to permit Fun Town to obtain Mrs. Murphy's consumer report, was objectively reasonable. Fun Town's argument reveals a misunderstanding of the FCRA. This "reasonable belief" defense is an affirmative defense for which Fun Town bears the burden of proof. For this reason, Fun Town's argument is

---

[5] *See* Dkt. 11, pages 9-10, at section B.

premature, and the Court should not consider Fun Town's affirmative "reasonable belief" defense in ruling on its renewed motion to dismiss.

Fun Town's argument also fails to consider that the FCRA imposes liability on any person who willfully <u>or</u> negligently obtains a consumer report for a purpose that is not authorized by the FCRA. 15 U.S.C. §§168 1b(f); 1681n(a))); *see* <u>Fjeld v. JPMorgan Chase Bank, N.A.</u>, No. CV H-13-1746, 2014 WL 12599403, at *2 (S.D. Tex. Feb. 11, 2014) (citing <u>Norman v. Northland Grp. Inc.</u>, 495 Fed.Appx. 425, 426 (5th Cir. 2012) (<u>per curiam</u>)). For a violation to be "willful," thereby justifying an award of punitive damages, "a defendant's *course of conduct* must exhibit 'conscious disregard' for or entail 'deliberate and purposeful' actions taken against a plaintiff's rights." <u>Simoneaux v. Brown</u>, 403 F. Supp. 2d 526, 532 (M.D. La. 2005) (quoting <u>White v. Imperial Adjustment Corporation</u>, 2002 WL 1809084, *6 (E.D.La. Aug, 6, 2002) (emphasis in original)). Although the term "willful" is not defined by the Act, "it is clear that neither malice nor evil motive need be established for a finding of 'willfulness' to be made." *Id.* (quoting <u>Wiggins v. Equifax Services, Inc.</u>, 848 F.Supp. 213, 219 (D.D.C.1993) (*See* <u>Stevenson v. TRW, Inc.</u>, 987 F.2d 288, 294 (5th Cir.1993) (citing <u>Fischl v. General Motors Acceptance Corp.</u>, 708 F.2d 143, 151 (5th Cir.1983)))). Thus, "'willful' under the Act is demonstrated by a showing of 'knowingly and intentionally committing an act in conscious disregard for the rights of others.'" <u>Id.</u> (internal citations omitted).

In <u>Caban v. HSBC Mortgage Services</u>, this Court ruled that plaintiff stated a plausible claim for a willful violation of the FCRA where the defendant knew: 1) that plaintiff did not bear personal liability for the account at issue; 2) the was no open account between plaintiff and defendant; and 3) plaintiff did not seek credit from defendant. 373 F. Supp. 3d 709, 713–14 (N.D. Tex. 2016). Similarly, in the present case, Mrs. Murphy made it unequivocally clear that she did

not wish to be involved in any business transaction involving Fun Town, she did not have an open account with Fun Town, and that she was not seeking financing from Fun Town. Dkt. 9, pages 2-4, at ¶¶10, 15, 21-26. Despite being cognizant of Mrs. Murphy's intentions, Fun Town knowingly and intentionally accessed Mrs. Murphy's consumer report. Id., page 4, at ¶27.

Even if Fun Town's affirmative defense was not premature, courts have found that the FCRA's "reason to believe" language, which applies to credit reporting agencies, does not extend to users of consumer reports, for the common sensical reason that a user always *knows* the purpose for which it intends to use the information being sought, *i.e.*, the reason for its own request. *See* Blumenfeld v. Regions Bank, No. 4:16-CV-01652-ACA, 2018 WL 4216369, at *4 (N.D. Ala. Sept. 5, 2018) (emphasis added). Thus, in the present case, the "reasonable belief" defense will not extend to Fun Town as a user of consumer reports.

Moreover, Mrs. Murphy has alleged that Fun Town knew it did not have Mrs. Murphy's authorization to obtain her consumer report, knew that she never intended to be involved in any business transaction and/or financing agreement with Fun Town, and represented to Mr. Murphy that it would abide by Mrs. Murphy's wishes. Dkt. 9, page 3, at ¶15-16. Nevertheless, Fun Town went back on its word by proceeding to access Mrs. Murphy's consumer report from 700 Credit. Id., at ¶21. These allegations are sufficient to state a claim against Fun Town for its willful and/or negligent violation of the FCRA.

## V.   CONCLUSION

For the reasons delineated herein, Plaintiff respectfully requests that this Court enter an Order denying Defendant's Renewed Motion to Dismiss (Dkt. 11) and for any other relief this Honorable Court deems just and appropriate.

Respectfully submitted,
**KIMBERLY MURPHY**

By:    s/ David M. Marco
      Attorney for Plaintiff

<u>Dated: September 11, 2020</u>

David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Telephone:   (312) 546-6539
Facsimile:    (888) 418-1277
E-Mail:       dmarco@smithmarco.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **KIMBERLY MURPHY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Case No.: 4:20-cv-602-P |
| v. | ) | |
| | ) | Judge Mark T. Pittman |
| **FUN TOWN RV DENTON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CERTIFICATE OF SERVICE**

**To:**  Leslie Ritchie Robnett
Kelly Hart & Hallman LLP
201 Main Street
Suite 2500
Fort Worth, TX 76102
leslie.robnett@kellyhart.com

    I, David M. Marco, an attorney, certify that on **September 11, 2020**, I shall cause to be served a copy of **Plaintiff's Response to Defendant's Renewed Motion to Dismiss**, upon the above-named individual via ECF.

                                                                                                   By:   s/ David M. Marco
                                                                                                     Attorney for Plaintiff

<u>Dated: September 11, 2020</u>

David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Telephone:   (312) 546-6539
Facsimile:    (888) 418-1277
E-Mail:       dmarco@smithmarco.com